# THE STATE v. W. E. MARION, Appellant.

## Division Two, June 20, 1911.

1  INFORMATION: Obtaining Deed by False Pretense: Grantee Not Named. An information charging defendant with having, by false pretense and misrepresentations, induced one Dimit to part with and convey his land to another, without naming the grantee in the deed, is fatally defective.

2. ——: ——: Delivery. Where the information charges in the language of the statute, that defendant "did then and there feloniously, designedly, knowingly and fraudulently, with intent then and there to cheat and defraud the said David Dimit, obtain the signature of the said David Dimit to a certain instrument," it sufficiently charges a delivery of the deed to defendant.

3. FALSE PRETENSE: Exaggerated Opinion. Representations which are mere matters of opinion and exaggerated praise of the subject-matter cannot be made the basis of a criminal charge of false pretense. Representations by an agent that a certain 200-acre farm contained "80 acres of land in cultivation and 70 or 80 acres more in timber just as good if cultivated, fair house and barn, some orchard, in fact a good stock farm that is worth $3000," made in a letter to the prosecutor on the strength of which he traded some lots to another for the farm, are matters of opinion, and cannot be made the basis of a criminal charge.

4. ——: Venue: To Man in Another State. Where the letter, upon which the charge of false pretense is based, was written to Dimit who was in Pennsylvania, and Dimit made out the deed conveying the lots to be exchanged for White's farm, and leaving the grantee blank sent the deed, after signing and acknowledging it, to defendant Marion, with the understanding that he was to write in the name of the grantee and was not to deliver it until a deed from White was obtained, the crime, if any, was committed in Missouri, and not in Pennsylvania; but it would be otherwise if the deed had been executed in complete form with the intent that the delivery to defendant would be a delivery to the grantee named, for then the depositing of the deed in the mail would be a delivery to the grantee.

State v. Marion.

5. **INSTRUCTION: Wrong Punishment: Ex Post Facto Amendment.** An instruction directing the jury to fix defendant's punishment at imprisonment in the penitentiary for a term not less than two nor more than five years, where the statute in force at the time the offense was committed declared the punishment should be imprisonment in the penitentiary not more than five years or a fine or imprisonment in the county jail, is erroneous. Although the instruction is in harmony with the statute as subsequently amended, it would be giving to the amended statute an *ex post facto* effect to make it apply to a previously committed offense.

6. ————: Referring to Information for Offense: False Pretense. An instruction, in the trial of a defendant for obtaining a deed by false pretense and misrepresentations, which does not tell the jury what false representations the defendant is charged with, but refers them to the information for their ascertainment, is erroneous.

7. **EVIDENCE: Deposition in Another Case: Obtaining Deed Under False Pretense.** Defendant's deposition, taken by the prosecutor in a civil suit brought by the prosecutor against defendant, to set aside the deed he is charged with having obtained by false pretense, no prosecution having then been begun and he making no objection to testifying at the time on the ground that to do so would incriminate him, is admissible in evidence against him in a subsequent trial of the criminal offense based upon false pretense in obtaining the deed.

8. ————: ————: ————: Statute: Sec. 6360, R. S. 1909: Fraudulent Conveyance. Nor does Sec. 6360, R. S. 1909, make defendant's deposition inadmissible in such case. The words "fraudulent conveyance" therein have a well-defined meaning in law, and refer always to fraud on the part of the grantor or vendor against the right of his creditors, or of purchasers from him, and do not refer to the act of inducing, by false representation, the owner of land to convey the same.

Appeal from Barry Circuit Court.—*Hon. F. C. Johnston*, Judge.

REVERSED AND REMANDED.

*Mayhew & Sater* for appellant.

(1)  The undisputed evidence in the case showed that the venue of the crime, if any had been committed,

was in Pennsylvania, as the prosecuting witness testified that was the place where he and his wife signed the deed. In a prosecution for obtaining money or property by means of false representation, the place where the money or property is obtained, without regard to where the representations were made, is the place in which the party should be prosecuted. State v. Shaffer, 89 Mo. 271; State v. Lichliter, 95 Mo. 402; State v. Gritzber, 134 Mo. 527; State v. Flanders, 118 Mo. 233; State v. Miller, 212 Mo. 79; Commonwealth v. Wood, 142 Mass. 459; State v. Briggs, 7 L. R. A. (Kan.) 278. (2) There is a variance between the deed described in the information and the testimony relative to the deed executed by the prosecuting witness. In order to constitute the offense, there must be an intent to defraud at the time when the property or the signature to the instrument is obtained. State v. Norton, 76 Mo. 180; State v. Jackson, 112 Mo. 585. Under the evidence there was no intent to defraud. The testimony of all the witnesses who were acquainted with the farm testified that it was as good a farm as the defendant represented it to be. 12 A. & E. Ency. of Law, 824; State v. Norton, 76 Mo. 180; State. v. Jackson, 112 Mo. 585. The obtaining of property must be made by the party accused or for his benefit, which was not the case in this instance. Ray v. Garrett Dears, C. C. 232; 6 Cox C. C. 260; 2 C. L. R. 106; 17 Jus. 1060; Bracey v. State, 64 Mo. 26. (3) The court erred in giving instruction 2. We especially call attention to the punishment prescribed in this instruction, which provided for imprisonment in the penitentiary for a term of not less than two years nor more than five years. Sec. 1927, R. S. 1899; sec. 1904, R. S. 1899; State v. Flanders, 118 Mo. 233; State v. Brossler, 139 Mo. 524; State v. Pickett, 174 Mo. 663; State v. McNerney, 118 Mo. App. 60. The Legislature of 1909 amended Sec. 1927 as to the punishment, but the crime that the defendant is alleged to have

committed was committed before the 1909 amendment. The Legislature has no power to change the punishment of an offense by statute passed after it is committed. State ex rel. v. Willis, 66 Mo. 131; State v. Kyle, 166 Mo. 304. (4) Instruction 2 is erroneous, because it authorizes the jury to convict the defendant if they believe he made the false and fraudulent representations and false pretenses set forth in the information, when a number of the representations complained of were mere opinions and expectations of future happenings. The false pretenses, to authorize conviction, must be as to past or existing facts, not a mere promise as to the future. State v. Evers, 49 Mo. 542; State v. Vorback, 66 Mo. 168; State v. Peddy, 119 Mo. 425. (5) The information in this cause is defective on various grounds. Nothing alleged in said information constitutes a crime under our laws. The deed to which the signature of Dimit was alleged to have been fraudulently obtained is not sufficiently described. State v. Vorback, 136 Mo. 440; State v. McNerney, 118 Mo. App. 60; State v. Stow, 132 Mo. 199; State v. Pickett, 174 Mo. 663; State v. Phelan, 159 Mo. 122. (6) It is not sufficient that an indictment for obtaining money by false pretenses allege that by reason of false and fraudulent pretenses and representations of defendant, a certain person was induced to sell and deliver to such defendant certain articles or money, but must also charge that said person did deliver said property to defendant. State v. Kelly, 170 Mo. 151; State v. Phalen, 159 Mo. 122; State v. Hubbard, 107 Mo. 346. (7) It was an error for the court to permit the State to read the testimony of defendant taken in a deposition in a suit to set aside the deed in question. Sec. 6360, R. S. 1909.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

(1) The information is valid and sufficient and properly charges the offense. Sec. 4565, R. S. 1909; State v. Barbee, 136 Mo. 440; State v. Flanders, 118 Mo. 227; State v. Feazell, 132 Mo. 176; State v. Pickett, 174 Mo. 673. (2) The trial court permitted the prosecuting attorney to introduce as evidence in chief the deposition of appellant taken before a notary public about a month before the filing of the information, appellant having been subpoenaed and sworn to testify before the said notary in a civil case filed with reference to the property mentioned and described in the information. Sec. 23, article 2 of the State Constitution provides that no person shall be compelled to testify against himself in a criminal cause. The court permitted the evidence to be introduced as a voluntary statement on behalf of the appellant. Was the evidence a compulsory answer upon oath, or was it voluntary? The leading case upon the question here involved is found in People v. McMahon, 15 N. Y. 384. A full discussion bearing upon this subject may be found in the following cases: State v. Faulkner, 175 Mo. 615; State v. Woodward, 182 Mo. 412; State v. Newcomb, 220 Mo. 66. The leading case in this State is State v. Young, 119 Mo. 520. See also Josephine v. State, 39 Miss. 650; Regina v. Wheater, 2 Moody C. C. 45; Rex v. Merceron, 2 Starkie, 366; Wood v. State, 3 S. W. (Tex.), 336. The ground upon which this class of evidence is admitted is whether or not the evidence as given was voluntary.

ROY, C.—The defendant was convicted in the circuit court of Barry county for a violation of section 1927, Revised Statutes, 1899, and sentenced to two years in the penitentiary. The information was filed March 21, 1910, and charged that the defendant on

the —— day of March, 1909, obtained the signature
of David Dimit to a warranty deed conveying said
Dimit's interest in eight lots in Dimit's Addition to
Monett in Lawrence county, by false representations
as to 200 acres of land in Stone county, which were
given in exchange to Dimit for the lots.

The information is as follows (omitting caption):

"James Talbert, prosecuting attorney within and
for the county of Barry and State of Missouri, acting
herein under his oath of office and based upon his best
information and belief, informs the court that W. E.
Marion, on the —— day of March, 1909, at and in
the county of Barry in the State of Missouri, did then
and there feloniously, designedly, knowingly and
fraudulently, with intent then and there to cheat and
defraud one David Dimit, falsely pretend, represent
and state to the said David Dimit that the owner of
the Stone county land, meaning certain land in Stone
county, Missouri, hereinafter described, has 200 acres
of good strong land, 80 acres in cultivation that will
raise 40 or 50 bushels of corn to the acre, and about
60 or 70 acres more in timber that is as good if in
cultivation, fair house and barn, some orchard, in fact,
a good stock and grain farm that is worth $3000;
that he (meaning the owner of the Stone county land)
offered to take the lots belonging to the said David
Dimit and $200 cash, the said David Dimit to assume
a $1500 mortgage on the Stone county land; that the
said W. E. Marion had made the owner of said land
a $1500 ten-year loan; that there was about $100 ac-
crued interest due; that it was a good trade for the
said David Dimit and that he, the said W. E. Marion,
could rent said land and it would bring an income all
the time. And the said David Dimit, believing and
relying upon the said false and fraudulent representa-
tions and pretenses so made as aforesaid by the said
W. E. Marion to be true and being deceived thereby,
was induced by reason thereof to then and there sign,

acknowledge and deliver to the said W. E. Marion a warranty deed conveying all the right, title and interest of the said David Dimit in and to the following described land, to-wit: Lots 7, 8 and 12 in block 1; lots 6, 7 and 8 in block 2, and lots 3 and 4 in block 3, all in Dimit's addition to Monett, in Lawrence county, Missouri, said lots being then and there the property of the said David Dimit, and of the value of $875; and the said David Dimit, believing and relying upon the said false pretenses and representations so made as aforesaid by the said W. E. Marion, was induced by reason thereof to accept in exchange for the said deed of the said David Dimit above described, a deed from one W. White purporting to convey to the said David Dimit the said 200 acres of land in Stone county, Missouri, described in said deed of W. White as follows, to-wit: The E. 1-2 of the N. E. 1-4 and the S. W. 1-4 of the N. E. 1-4 and the N. W. 1-4 of the S. E. 1-4 and the N. E. 1-4 of the S. W. 1-4, section No. 32, township No. 22, range No. 24, said deed of W. White purported to be subject to a mortgage or deed of trust for $1500 and a commission deed of trust (amount not stated) which the said David Dimit, as grantee in said deed, assumed and agreed to pay; and the said W. E. Marion, by means of the said false pretenses and representations so made as aforesaid to the said David Dimit, which false pretenses and representations were then and there believed and relied upon by the said David Dimit, did then and there feloniously, designedly, knowingly and fraudulently, with the intent then and there to cheat and defraud the said David Dimit, obtained the signature of the said David Dimit, to a certain instrument in writing, to-wit, the warranty deed of the said David Dimit above mentioned, conveying all the right, title and interest of the said David Dimit in and to the said lots in Dimit's Addition to Monett, in Lawrence county, Missouri; whereas, in truth and in fact, the said statements,

representations and pretenses were wholly false and fraudulent, all of which the said W. E. Marion then and there well knew; whereas, in truth and in fact, the said 200 acres of Stone county land above described was not good strong land, but was poor thin land; whereas, in truth and in fact, there was not 80 acres of said land in cultivation that would raise 40 or 50 bushels of corn to the acre, but would probably raise 20 bushels to the acre under the most favorable circumstances; whereas, in truth and in fact, there were not 60 or 70 acres more of said land in timber that is as good if in cultivation; whereas, in truth and in fact, there were not a fair house and barn and some orchard on said lands, but there was a very poor house and barn practically worthless for the purposes for which they were built and no orchard whatever; and whereas, in truth and in fact, the said 200 acres of Stone county land was not then a good stock and grain farm that was worth $3000, but was a poor mountain farm not worth over $1000 or $1200; and whereas in truth and in fact, there was not only a $1500 mortgage with accrued interest on said lands, but there was an additional mortgage or deed of trust on said lands of the amount of $375; and whereas in truth and in fact, the said W. E. Marion nor no one else could rent said land so that it would bring an income all the time; all of which the said W. E. Marion then and there well knew. And so the said W. E. Marion, by means and by use of the said false pretenses and representations made to the said David Dimit as aforesaid, did then and there feloniously, designedly, knowingly and fraudulently cheat and defraud the said David Dimit; against the peace and dignity of the State.''

The defendant was a real estate and loan agent at Monett in Barry county; and as such had previously sold for Dimit the greater portion of the lots in Dimit's Addition to Monett in Lawrence county. There

were eight lots remaining unsold, and it was those remaining lots that were conveyed by the deed set out in the information. Dimit had previously lived at Monett, and at the time of the transaction in controversy had been living at Avilla, Pennsylvania, for about four years. Defendant was engaged, as agent for Dimit, in trying to sell or trade the remaining lots. The defendant wrote Dimit the following letter:

Monett, Mo., 3—23—'09.

Mr. David Dimet, Avilla, Pa.

Dear Sir:—I went to West Plains Sat. to look at that farm. It looks like you had almost traded, but I am going to be frank with you and say to you to do just as I would do if the lots were mine and the land would be mine. You were to give them $700 cash, 6 lots and assume $1675 principal and int. of a mtg. Now Dave, I would not give $2000 for the farm; it is not worth it and I can buy better for $1600, but if you trade with them your $2375 cash and 6 lots, you can't afford to do it and never could come out on it. There is 8 or 10 acres of fair orchard, but has seen its best days, fair in fact; good buildings, but they are small. There is about 10 acres of land in a fair state of cult. and possibly 20 a. more that has been plowed, but not for years and is grown up with brush. The land is all white ash, post oak soil just as poor as it can be. We have none as bad in Barry Co. and it is full of tight flint rock. True it is not but four miles from town, but to make a long story short I do not see where you could afford to give the 6 lots and assume the mortgage and I would not do it. I could have wrote you yesterday, but wanted to see the man that owns the 200 acres I told you about. Now I got him to where he will give you a good trade. He has 200 acres of good, strong land, 80 acres in cultivation that will raise 40 or 50 bushels of corn and about 60 or 70 acres more in timber that is good if in cult. Fair house and barn, some orchard, in fact a good stock and grain farm that is worth $3000; it is ten miles north of Urbanette, Ark., in Stone county Mo., 4 miles north of my Stone county farm. I made him a $1500 10-year loan; there is about $100 accrued interest due sometime this spring. I think I could arrange to pay the loan off, although it is not privileged to pay it for 3 years. Now, he has offered to take your 8 lots, and $200 cash and you assume the $1500 mortgage and accrued interest. Now Dave, I am practically certain if you will execute a deed to the lots, I can get his land and you assume the $1500 and int., and not pay him $200, or in other words, give your lots even for his equity and it is a good trade for you. I can rent it and it will bring you an income all the time and the land at West Plains would not bring in anything.

I enclose deed in blank for the 8 lots; you execute it and re-
turn it to me. I feel sure I can get the 200 acres and know it
will be a good trade for you. If you still want to trade with the
West Plains people, make a deed in blank leaving out lots 3 and
4 in block 3. But let me hear from you at once, as there is a lot of
corn land to brake on the 200 acres and it is time. There is no
land on the 160 to rent to speak of; in fact, I do not believe any one
would rent it unless it was to live in the house.

Respt., W. E. MARION.

John Aulgar sends his regards. He is building some porches
for me and just went home. Dave, do not tell those fellows at
West Plains, but knowing as I did I could not advise the trade, but
they tried hard to fix it with me, but I did not tell them what I
would do. I told them I would report to you. The money is all they
want and they would take 2 or $300 and let go and will let go for
nothing soon.

Upon the receipt of that letter, Dimit executed
a deed to the lots, acknowledged it, and mailed it from
Avilla, Pennsylvania, to defendant at Monett. It was
complete in every respect, except that the name of
the grantee was left blank for defendant to fill, in
accordance with the request in the letter. In August,
1909, Dimit received from the recorder the deed for
the Stone county land executed by W. White. Accord-
ing to the evidence of defendant, one S. C. White
owned the 200 acres, but the record title was in his
brother, W. White.

Dimit testified that he had never seen the 200
acres and relied on the statement in defendant's let-
ter. The testimony for the State tended to show that
the land was post-oak, rocky, hill land; that it rented
in 1908 for $60 and was not rented in 1909; that there
were spots of good, rich land on it; that in one place
there were 15 acres just as good as anybody's land;
that there is a log house 16 by 16 feet, with an upstairs,
and a barn about 60 by 24 feet, with about 70 acres in
cultivation, and that it is worth from $3 to $6 per
acre. There was no showing in State's evidence
whether there was 60 or 70 acres of timber land as
good for cultivation as the land now in cultivation,

but a witness for the defendant testified that the land not in cultivation was not as good as the other.

For the defendant, T. F. Wolfenbarger testified: "Well, I would call it tillable land and some gravelly; very good soil about the house, in fact all that I have even been over, which is not much. About 70 acres in cultivation, reasonably good land for that country. I have seen some tolerably good crops grow there and some very light, for we have some bad seasons. It is reasonably worth $15 per acre. The 70 acres will average more than 20 bushels of corn to the acre; 30 would be a good average for a good season. There is a good peach orchard there."

L. C. Underwood testified: "It is a ridge farm, about 60 acres cultivated, a little spotted like, all ridge land. The timber is post oak and black oak. There were good crops both seasons I saw it. It is worth about $15 per acre."

Wm. Rose testified: "There are 60 or 70 acres in cultivation. There is black oak, post oak, white oak and black-jack. The timber isn't large. It is worth about $15 per acre."

The defendant testified: "In June, 1908, I was on the land to examine it for the puropse of making a loan on it. There was 30 or 40 acres of corn growing that gave promise of 40 or 50 bushel per acre. I thought there was a little better than 80 acres in cultivation. There were from 50 to 100 fruit trees. I made a loan on the place to W. White. The lots were deeded to Mr. Walker White for some reason best known to Mr. S. C. White. There was a judgment against him and he asked me to deed the lots to his brother Walker White. The land is worth $15 per acre. I did not tell Dimit the name of the owner, because I didn't think he cared about it. The loan was made about January 1, 1909. There was a $1500 deed

235 Sup.—24

of trust and a $375 deed of trust on the land.  The latter was a commission note."

Dimit brought a suit in equity against Marion to set aside the conveyance, and on December 13, 1909, Marion was subpoenaed before a notary public, at the instance of Dimit to give his deposition, and he did give it, and his deposition was offered by the State in this case and objected to by the defendant, on the ground that the defendant was forced by process to attend and give his deposition in a civil suit, and for the further reason that the statute recites that when a party gives his testimony, such testimony shall not be used in a prosecution against him for the purpose of showing a fraudulent conveyance.  The objections were overruled and the deposition read.  In that deposition the defendant testified:  "At the time Dimit made the deed, S. C. White owned the land, and the Dimit deed was sent to me with grantee blank, and I wrote the name of White as grantee therein on the day I got it.  Mr. White gave me the deed to Dimit for the Stone county land the day that W. White signed the deed of trust and notes.  I executed this deed in blank and gave it to S. C. White and Mr. White had the deed in his pocket and when I got the Dimit deed, he told me to close the deal.  Either White or I wrote Dimit's name in the blank.  I wrote W. White's name in deed to the lots and gave it to S. C. White.  In making the loan there was 2½ per cent of the interest for ten years payable to me in installments secured by separate deed of trust on Stone county land.  I bought all the lots from S. C. White and had the lots in controversy.  He and I made a deal and I got the lots.  W. White made three deeds to me for the lots, each deed having some of the lots in it and left the name of the grantee blank.  The deeds were made April 17.  I don't know how much rent the Stone county land paid in 1906 or 1907 or 1908."

Instruction numbered 2 given by the court is as follows:

"The defendant stands charged in the information with inducing one David Dimit, by means of false and fraudulent representations and false pretenses, to sign and deliver to defendant a warranty deed to certain real estate in Lawrence county, Missouri; to this charge he pleads not guilty, thereby raising an issue of fact between him and the State, which you, the jury, must determine from the evidence in the cause, in connection with which the court instructs you as follows:

"If you find and believe from the evidence beyond a reasonable doubt that at the time and in the county of Barry and State of Missouri, and within three years prior to the filing of the information herein, to-wit, March 21, 1910, the defendant did unlawfully, fraudulently, falsely and designedly make to the said David Dimit the false and fraudulent representations and false pretenses set forth in the information, and if you further find and believe from the evidence that by means of such false and fraudulent representations and false pretenses, the defendant did unlwfully and designedly obtain from said David Dimit his signature to the written instrument, to-wit, the warranty deed mentioned and described in the information, to him, the said defendant, with the intent on the part of him, the said defendant, then and there to cheat and defraud the said David Dimit, as charged in the information, you will find the defendant guilty as charged in the information, and assess his punishment at imprisonment in the penitentiary for a term of not less than two nor more than five years. And, unless you so find and believe from the evidence in said cause, you will acquit the defendant."

I. The defendant contends that the information is insufficient in not fully describing the deed which

was obtained from Dimit. It does not state the name of the grantee in the deed.

In State v. Barbee, 136 Mo. 440, l. c. 443, SHER-WOOD, J., says: "Nor is it stated in whose favor such over-drafts were drawn, nor the dates nor the amounts thereof. Now all these things would have to have been proved in order to convict, and so it was necessary that they should have been alleged, because what is not alleged is not allowed to be proved, and because, further, the law, actuated by the same beneficent spirit which presumes innocence until guilt be established, will presume that what the indictment does not charge does not exist."

In State v. Stowe, 132 Mo. 199, l. c. 204, the court, speaking through SHERWOOD, J., says: "It must be quite clear that this indictment is lacking in several essentials which go to make up a valid charge of crime. A person accused is entitled by the terms of the Bill of Rights, article 2, section 22, 'to demand the nature and cause of the accusation' against him, and unless the indictment gives this information, it does not answer the end the Constitution requires it should accomplish. The charge in the indictment under consideration is vexatiously vague and indefinite in that it does not state (a) in what county the mortgage referred to was recorded, nor indeed (b) that it was recorded anywhere, nor (c) give the names of the mortgagor and mortgagee, nor (d) the date of the mortgage, nor (e) the amount it was given to secure, nor (f) a description of the horses, which secured the mortgage, although Waugh, to whom the horses were alleged to have been exchanged, was a witness whose name was indorsed in the indictment."

As we have held in subdivision 4 of this opinion that the offense was not complete until the name of the grantee was written in the deed, we think that the failure to state the name of the grantee is fatal.

II.  Appellant also contends that the information is insufficient in not alleging that Dimit delivered said deed to defendant, but we are of the opinion that the language of the information, to-wit, that said defendant "did then and there feloniously, designedly, knowingly and fraudulently with the intent then and there to cheat and defraud the said David Dimit, obtain the signature of said David Dimit to a certain instrument," etc., following the language of the statute, is a sufficient allegation of delivery.

III.⁻ It is also insisted that the representations alleged are mere matters of opinion and cannot be made the basis of a criminal charge.

Bishop says: "It being the common understanding that opinions expressed by persons negotiating in trade are not mutually regarded as facts on which the listening party is to base his action, one's false statement as to what is his opinion is not a statutory false pretense.  The pretense must be of a fact, as distinguished from the state of the speaker's mind, and not of a nature to be known by him."  [2 Bishop's Criminal Law, sec. 429.]

Wharton says:  "We may therefore hold generally that mere exaggerated praise is not a false pretense.  Thus to say of a horse that he is a 'first-class animal,' or 'a fine trotter,' or 'is all right,' is a puff which is not indictable, but the statute applies where the defendant makes a specific statement as to soundness, and when he falsely pretends to the prosecutor that a certain horse is the famous horse 'Charley,' which it is not.  And it is a mere puff to say of a mixture that it is 'good,' or 'first-class'; but it is an indictable false pretense to declare falsely that it is a non-explosive burning fluid."  [2 Wharton's Criminal Law, sec. 1155.]

We are of the opinion that the allegation as to false pretenses states what is mere matter of opinion

and exaggerated praise of the subject-matter which does not constitute an offense.

So far as the information goes, the deal was made between Dimit and Marion while dealing at arm's length, and while neither had the advantage of the other by reason of the confidential or fiduciary relation.

The allegation as to the second encumbrance on the land is nullified in the information itself by the statement that Dimit accepted the deed to the land subject to both deeds of trust and agreed to pay them.

IV. Appellant insists that the offense, if any, was committed in Pennsylvania, and that the trial court had no jurisdiction on that account.

We agree that if the deed had been executed in complete form, including the name of the grantee, and mailed by Dimit with the intent that the delivery of the deed to Marion should be a delivery to the grantee therein, then the depositing of the letters in the mail by Dimit would have been a delivery to the grantee, and the offense would be one for the cognizance of the courts of Pennsylvania. But such was not the case for two reasons: first, Dimit sent the deed with the understanding that Marion's possession was Dimit's possession, until, on completion of the deal, the deed was delivered to the persons whose name should be written therein as grantee, i. e., the owner of the Stone county land; second, the deed was not a deed until Marion, by authority from Dimit, filled in the name of the grantee, and that was done in Barry county, and determines the jurisdiction in this case.

Devlin says: "The deed, when filled out and delivered, is a valid deed." [1 Devlin on Deeds, sec. 457.] That doctrine is affirmed by this court in Field v. Stagg, 52 Mo. 534, and Thummel v. Holden, 149 Mo. 677.

V. Instruction numbered 2 is erroneous. At the time of the alleged offense the prescribed penalty by sections 1927 and 1904 was not more than five years in the penitentiary or by fine or imprisonment in the county jail.

Section 1927 was amended in 1909, and became section 4565, and, as amended, provides for punishment solely by imprisonment in the penitentiary, but clearly, as to a previously committed offense, it is *ex post facto* and does not apply. [State v. Kyle, 166 Mo. 287, 1. c. 304.]

VI. Instruction numbered 2 is erroneous by reason of the fact that it does not tell the jury what false representations the defendant is charged with, but refers the jury to the information for that purpose. [State v. McCaskey, 104 Mo. 644.]

VII. The court committed no error in admitting the deposition of defendant taken on December 13, 1909, in the civil suit between Dimit and Marion. It is true that Marion was subpoenaed by Dimit to appear and give his deposition in that suit. The evidence does not show that he, at the time his deposition was taken, objected to testifying on the ground that it would incriminate him. It was more than three months before this prosecution was begun. His deposition was not taken at a coroner's inquest, or at a preliminary hearing of the felony charge. There is no showing that any prosecution was then contemplated, or that defendant was then suspected of a crime. He was not an inexperienced youth, or an ignorant man.

The case of State v. Young, 119 Mo. 495, has become a leading case on this subject. GANTT, J., says (1. c. 518): "Another distinction made by the common law courts and followed by the courts of this country, is that a statement made under oath will not be reject-

ed on account of its having been under oath, unless that oath was administered in the course of some judicial inquiry in regard to the crime itself, for which the person is on trial. [Wheater's Case, 2 Moody's C. C. 45; Rex v. Merceron, 2 Starkie, 366; Josephine v. State, 39 Miss. 613-650.]''

And on page 521, quoting from People v. McMahon, 15 N. Y. 384, he says: ''In that case the authorities are collated and from them the following rule is deduced: 'When a party is examined as a witness before a magistrate or coroner's inquest and is afterwards prosecuted for the same offense under investigation, his testimony, so taken, will not be received against him, if at the time of his examination, he was charged or suspected of the crime, and that he was informed of the charge or suspicion against him.' This we believe to be the correct rule; that which is supported by the weight of authority. It will be seen that the fact of arrest or no arrest does not figure in this proposition. Whether the party be under arrest, either by warrant or without warrant, or is not under arrest, if he is charged or suspected of the crime . . . . his testimony taken before the magistrate or coroner's inquest is not admissible against him.''

And the latter case was approved and followed in State v. Faulkner, 175 Mo. 546 (l. c. 608).

Section 6360, Revised Statutes 1909, does not apply. It is as follows: ''Whenever any person shall testify, either as a party or as a witness, in any suit or proceedings now or hereafter pending, the testimony of such person shall not be used as evidence to prove any fact in any suit or prosecution against such person for any penalty for violation of any law in relation to fraudulent conveyance of property.''

We do not find that this section has ever been judicially construed. The words ''fraudulent conveyance'' have a well-defined meaning in law, and refer always to fraud on the part of the grantor or vendor

against the right of his creditors, or of purchasers from him.

There is no reason for presuming that the Legislature intended that section to be broader in its application than its languge indicated.

For the reasons above given the judgment is reversed and the cause remanded.

*Bond, C.,* concurs.

PER CURIAM:—The foregoing report of the commissioners is hereby adopted as the opinion of the court.