STATE of Missouri, Respondent,

v.

John W. GREEN, Appellant.

No. 45637.

Supreme Court of Missouri,
Division No. 2.

Oct. 14, 1957.

David M. Grant, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Donal D. Guffey, Asst. Atty. Gen., for respondent.

EAGER, Judge.

Defendant was indicted in the City of St. Louis for procuring money from one Beatrice Mosley by false pretenses and representations; more specifically it was charged that he represented to her that he had influence with the members of the Board of Probation and Parole, and that he would, by using such influence, secure a parole for her husband, Edward Mosley, who was then in the penitentiary; also that, being so deceived, she paid him $600, of which $100 was alleged to have been paid in cash, and $500 in postal money orders. At the time of the alleged offense, in 1952, defendant was a member of the Missouri Legislature. The indictment was filed on September 7, 1954. Defendant was arraigned, and through counsel, filed a motion to dismiss the indictment; the record shows that this motion was argued and taken un-

der advisement; no ruling is shown, and for our purposes, we may assume that there was no ruling. On November 24, 1954, the state, by leave of court, filed an information in lieu of the indictment; in substance, this changed the date (or dates) alleged from "between the first day of August, 1952, and the 31st day of August, 1952," to "on the 15th day of November," 1952, added the words "and could" after the word "would" in defendant's representation of future action, changed the amount alleged to have been paid from $600 to $100, but set out verbatim (following the allegation of payment) five-$100 money orders. On January 14, 1955, a motion to dismiss this information was overruled. Sundry continuances followed (and preceded) that ruling; when the case was finally called for trial on January 9, 1956, the state, again by leave of court, amended the information by interlineation, and shortly thereafter rewrote it to conform to the interlineations; thereupon defendant renewed and refiled his motion to dismiss the information and that motion was then overruled. The trial proceeded, but on the next morning a mistrial was declared because of certain publicity in a St. Louis newspaper.

■ The trial from which this appeal resulted began on February 6, 1956. On the next day the jury returned a verdict of guilty and assessed defendant's punishment at a fine of $1,000. This court has jurisdiction because a conviction under section 561.370 (all citations are to RSMo and V.A.M.S.) is a felony, although it provides, by reference, for graded punishments. A timely motion for new trial was filed and overruled, allocution granted, and sentence imposed.

Beatrice Mosley, the complaining witness, testified in substance: that she went to see defendant at his mother's home in St. Louis early one Saturday evening, she having just returned from Jefferson City; that she waited about an hour, and when defendant came he took her into the kitchen so they could talk privately; that she told the defendant that she "was to leave $100.00 with him for a payment to secure a parole for Edward by Christmas, and the amount of money was to be $500.00"; that, however, defendant told her "it would be $600.00 * * * because he had to divide it between the men on the parole board"; that she gave defendant $100 in cash, of her money, probably in two $50 bills, and asked for a receipt; that defendant declined to give her a receipt, and offered the money back, but she told him to keep it and that she would send the rest when she got back to Columbus, Ohio, where she lived and worked; that defendant gave her a specific St. Louis address to which the rest of the money should be sent; that she had never seen the defendant previously. She further testified: that "he said he had to divide the money between the men on the parole board, that is what he told me, and he would need $600.00 to do this with"; that neither she nor her husband owed defendant any money. Over defendant's objections the court permitted her to testify that after she returned to Columbus, and on November 28, 1952, she purchased and mailed to defendant by registered mail to the address designated, five $100 postal money orders; in so testifying, she identified her original receipts, photostats of the money orders, and the registry return receipt which she received; all of these exhibits were offered and received in evidence. Thereafter she heard nothing from the defendant. On cross-examination this witness testified that she "sought out" defendant and found him; on redirect she stated that defendant said that "as soon as I got him the money he would be able to secure the parole for me," and that defendant told her that he had talked with her husband. This witness had completed a high school education in Chattanooga, Tennessee.

The Executive Secretary of the Board of Pardon and Parole testified: that a parole could not be purchased; that Edward Mosley was discharged by commutation of sentence on May 4, 1955, and was not pa-

roled; that Mosley did make applications for parole, first on June 9, 1953, and later about January 13, 1954; that in January, 1953, the original hearing date for a parole was advanced from January, 1954, to July 19, 1953 "by request of Representative Green of St. Louis"; and that it was not unusual for legislators to make inquiry concerning the parole status of inmates of the penitentiary.

Sergeant H. H. Schaperkotter of the Missouri Highway Patrol testified that he and another member of the Patrol, Lieut. Barton, interviewed defendant in St. Louis on January 17, 1954. He further testified: that they told defendant they had information that he had taken $600 in the matter of a parole for Edward Mosley, Jr.; that defendant did not deny the receipt of the money but gave three conflicting versions of his reasons for taking it; first, that the money had nothing to do with a parole; second, that it was received in a parole matter, that he gave the money to an unidentified attorney who was "to work for Mosley in regard to a parole," that he, defendant, got part of it back for his own use, and the rest "went to several different people" but that he "didn't rat on other people"; and third, that "his story would be that he did receive the $600.00, but that it was in payment of a debt owed him by Mosley and his family." This witness also related certain miscellaneous and somewhat rambling statements volunteered by the defendant, some of which will be referred to later. He testified also: that defendant was told that the witness had been investigating parole matters for three or four months; that in fact he was then assigned to an investigation of the whole parole system and personnel; that the defendant was a member of a legislative committee on Probation and Parole; that this particular case was referred to the witness by the Chairman of the Parole Board, and that he saw a notation on the jacket that defendant had been in the office.

Edward D. Mosley, Sr. testified: that he had long known the defendant; that in January, 1954, the defendant came to see him and "he told me about this money, that the law was in behind him about the money, and he would like for me to help him out * * *"; that defendant suggested that he " * * * go down to Jefferson City and talk to the boy and say he borrowed the money from him." This witness told the defendant that he would go, but in fact he did not.

The evidence for defendant consisted largely of character evidence and his own testimony; it is unnecessary to recite this in any detail for it cannot be considered here on the sufficiency of the state's case. It will suffice to say that the substance of defendant's testimony was: that Beatrice Mosley looked him up voluntarily and offered him money to help her to get her husband released; that he did not tell her that he had influence with the Parole Board and that he could get her husband a parole, and, in substance, that he made her no promises; that he went to see Edward Mosley, told the latter that his wife had paid him $100 and promised to send him $500, that he talked to a member of the Parole Board, contacted the Board several times, assisted in having the date of a parole hearing advanced and in getting the prisoner transferred to the Church (prison) farm, and that he attended a parole hearing. His theory was, in short, that he took the money with honest intentions and that he was merely to do what he could toward getting a parole for Mosley. The jury found otherwise. Defendant admitted that he had seen and talked to Mosley in the penitentiary some time before Mosley's wife came to see him, and that he had then talked with Mosley about a parole; he testified that the $600 was not for "expenses," but when asked specifically "what was the purpose" of the payment, his answer merely was "Well, I was going to—after I received the money I went to Mr. Grant and discussed it with him about the case." He also stated that he kept the money. Mr. Grant, defendant's counsel, testified that in the course of a visit and

general conversation, the defendant mentioned incidentally that he might need Grant's services in a parole matter. We omit much evidence which could only be material for its effect upon the jury; we are not concerned with that here. Motions for a judgment of acquittal were filed at the close of the state's case and at the close of the whole case. Both were overruled.

The respondent filed here its motion to dismiss the appeal because of the insufficiency of the transcript, particularly for the failure to include therein various orders of record, the motion for new trial, and the ruling thereon. The transcript as filed was wholly insufficient, but this court, by its order, permitted the appellant to supplement it; as thus supplemented, we hold it sufficient and overrule the motion to dismiss, although, even now, it is hardly a model for the use of the bar.

 Counsel for defendant contended in the trial court and argues here that the court was without "lawful authority" to permit the state to substitute an information for the indictment, because there had been no ruling holding the indictment insufficient under section 545.300; and it is further urged that the defendant was thus illegally deprived of a preliminary hearing. The substituted information was filed more than a year before the trial, and by leave of court. A motion to dismiss the indictment had been argued and submitted; we will assume, as counsel insists, that this motion had not been ruled on, although the record thereon is silent. Section 545.300 is in part as follows: "An information may be amended either as to form or substance at any time before the jury is sworn, but no such amendment shall be allowed as would operate to charge an offense different from that charged or attempted to be charged in the original information. If an indictment be held to be insufficient either as to form or substance, an information charging the same offense charged or attempted to be charged in such indictment

may be substituted therefor at any time before the jury is sworn. * * *" The substance of the changes made by this information have been recited above; it certainly charged no different offense. As a practical matter the failure to make a ruling on the sufficiency of an indictment should have nothing whatever to do with the right of a defendant to a preliminary hearing; in fact, it might be argued that the defendant would more properly be entitled to a preliminary hearing where an indictment had been ruled insufficient than he would be where an information has been substituted voluntarily. But that argument is academic here.

 Section 544.250 provides for a preliminary examination prior to information, but it also provides that no preliminary examination shall be required where an information is substituted for an indictment "as authorized by section 545.300 * * *." Counsel says that here the substitution was not so authorized because the indictment had not been held insufficient. As a part of our present Rules of Criminal Procedure, effective January 1, 1953, this court enacted Rule 24.02, 42 V.A.M.S. Supreme Court Rules, which is as follows: "The court may permit an information to be amended or an information to be substituted for an indictment at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." Therein the court omitted entirely the requirement (if in fact it was previously an actual requirement) that the indictment be *held insufficient*; the rule permits, generally, the substitution of an information for an indictment at the times and subject to the limitations stated therein. We have already ruled that no different offense was stated in the present information, and we hold now that no substantial rights of the defendant were prejudiced. The statutes referred to evidence a legislative intent that the finding and return of an indictment, as evidence of probable cause, should be and are a

sufficient and legal substitute for a preliminary examination. This court, in Rule 23.02, has provided that: " * * * No preliminary examination shall be required where an information has been substituted for an indictment." To this, there are no qualifications. The subject is clearly procedural, and thus within the rule-making power given to this court by Sec. 5, Art. V, Missouri Constitution, 1945, V. A.M.S. The rules referred to were in effect long before the original indictment in this case was returned.

■ In State ex rel. Downs v. Kimberlin, 364 Mo. 215, 260 S.W.2d 552, cited by defendant, the court had quashed an indictment; the discussion in the opinion of this court may, perhaps, be taken to indicate that in order to make the statute permitting substitution (now section 545.-300) applicable, there should be a ruling holding the indictment insufficient. However, we need not affirm or deny the correctness of the principle supposedly asserted, for the events there considered had all transpired prior to the effective date of the rules discussed above. (This is shown by our original records, of which we take judicial notice.) The court, of course, did not mention the rules. The same is true of the cases of State v. Batson, 339 Mo. 298, 96 S.W.2d 384, and State v. Mandell, 353 Mo. 502, 183 S.W.2d 59, which are also cited. These cases are therefore of no controlling or persuasive effect here. The cases of State v. Barr, 326 Mo. 1095, 34 S.W.2d 477, and State v. Everman, Mo., 44 S.W.2d 36, might be considered as indicating that even prior to the enactment of these rules, an information might be substituted for an indictment by leave of court, without any ruling that the indictment was insufficient. Thus, there appears to have been some confusion on the point; in any event, the question has now been resolved by the enactment of the rules, and we hold here that no order holding the indictment insufficient was necessary.

■ Counsel also contends, as we understand, that the court was without authority to permit the further amendment of the information on January 9, 1956, presumably because the original substituted information was, itself, unauthorized; what we have already said answers that contention. This amendment was made at the very beginning of the first trial (which resulted in a mistrial) and approximately a month prior to the final and actual trial; the changes did not result in the charge of any additional or different offense (Rule 24.02); nor did it prejudice any substantial rights of the defendant (section 545.290). See also State v. Mandell, 353 Mo. 502, 183 S.W.2d 59, cited by defendant, where the state was permitted to amend in like manner a substituted information, and where the court expressly held that the statute permitting the amendment of informations applied to substituted informations as well as to original informations filed after preliminary hearings. The only change of substance made here was the omission of the copies of the five $100 money orders, thus clearly charging a payment of only $100, but retaining, however, the allegation that defendant represented that he "would and could" obtain the parole upon payment of $600.

■ The next point made is that the indictment was a nullity and void, and hence "incapable" of substitution. This point was not preserved in the motion for new trial and it will not be considered here. Rule 27.20; State v. Hampton, Banc, Mo., 275 S.W.2d 356; State v. Kelly, Mo., 258 S.W.2d 611. The indictment was replaced by information and is not here as part of the record which we consider sua sponte. This is by no means to say that the indictment was insufficient. The allegation in the motion for new trial that "the facts stated in the paper writing containing the alleged charge do not constitute an offense under the law" is insufficient under Rule 27.20 to constitute a valid attack on the indictment or either of the informations,

no specific "grounds or causes therefor" being assigned. It is also urged that defendant's motion for a judgment of acquittal made at the close of the state's opening statement should have been sustained. This point was not raised in the motion for new trial, and it will not be considered now.

We next consider the sufficiency of the evidence, motions for a judgment of acquittal having been tendered. The theory of the argument now presented seems to be that the complaining witness voluntarily looked up the defendant and offered him money, that it "was not necessary for appellant to have opened his mouth," and that defendant's words did not in fact hold out any inducement based upon the representation of an existing and present influence, but merely a promise of honest efforts and help for the incarcerated husband. Perhaps defendant did not need "to have opened his mouth," but he did, as we shall shortly demonstrate. Counsel also urges us to recognize the efforts which defendant made on Mosley's behalf; the evidence showed efforts, but they were wholly unsuccessful, so far as a parole was concerned. Counsel also insists, as part of the argument outlined, that there was no misrepresentation of a past or existing fact, upon which the complaining witness relied. The basic question under the terms of the statute is: was there sufficient evidence to raise a reasonable inference in the minds of the jury that defendant did, with intent to cheat and defraud, and by any false pretense or representation obtain money (over $30) from Beatrice Mosley? We hold that there was. In this connection we consider only the state's evidence in support of the verdict, considering it as true, together with such legitimate inferences as may reasonably be drawn therefrom. State v. Sheard, Mo., 276 S.W.2d 196, and cases cited. It is true that Mrs. Mosley contacted defendant voluntarily, but only after the defendant had conferred with her husband in the penitentiary. The subject of a parole was immediately discussed between them, and she told defendant that "the amount of money was to be $500" for a parole by Christmas, and that she could leave $100 then; thereupon, and when defendant did "open his mouth," he told her that it would have to be $600, *because he had to divide the money between the men on the Parole Board* (stated at least twice in her testimony); and defendant also told her that "as soon as I got him the money he would be able to secure the parole for me." This conversation was in strict privacy, and, according to the state's evidence, defendant declined to give a receipt. We seldom find a case of "false pretenses" which, on its facts, is like any other; and, generally, in conducting such a discussion as we have here, a defendant does not spell out his intents, designs and representations with great exactness. We hold that the jury reasonably could have inferred from this evidence that defendant then and there represented to this woman that, by means of bribery, he then had sufficient, existing influence to procure a parole for her husband, and that for $600 he could and would do so. Palpably this was untrue, and on this evidence the question of his intent was solely one for the jury. Defendant's statements to the Highway Patrol Sergeant, giving three different and conflicting versions as to why this money was paid to him, might certainly be considered in corroboration of the other evidence. The same is true of the testimony of Edward Mosley, Sr. It is of no consequence that defendant did not specifically use the word "influence." For what other purpose would he claim the power to pay money to members of the Parole Board except, thereby, to exercise an influence upon them? (Illegal and dishonest, it is true, but nevertheless an influence.) Counsel cites the case of State v. Wren, 333 Mo. 575, 62 S.W.2d 853, 855, as holding there must be a misrepresentation of a past or existing fact as distinguished from a mere future promise; the case so holds, but it also holds that when a false representation of an existing fact " 'calculated to induce

\* \* \* confidence'" is made, and is accompanied by a promise of future action, the whole is sufficient as a false pretense, " 'although the promise, as well as the false statement of fact, operated upon the mind of the prosecutor \* \* \*.'" That case does not aid the defendant here; on its facts it is somewhat similar to the present case; there, and here, the representation of fact would have been futile without the promise. Much of the discussion in that case is apropos here, but space does not permit us to quote from the opinion or to discuss it further. See also State v. Neal, 350 Mo. 1002, 169 S.W.2d 686. The trial court properly declined to direct a judgment of acquittal.

■ Complaint is made of Instruction No. 1, given by the trial court, because it made reference to the fact that defendant had been indicted, and also for the supposed absence of an evidentiary basis. The record shows no objection made to the giving of that, or any other instruction. We shall not consider the point. Objection is required, as in civil cases, to all rulings and orders of the trial court. Rule 28.01; section 510.210. The giving of an instruction is a ruling of the court. Objection may not be made for the first time on appeal, in either civil or criminal cases. Bowers v. Etherton, Mo., 216 S.W.2d 83; State v. Tourville, Mo., 295 S.W.2d 1, and cases there cited.

■ Defendant next asserts error in the admission into evidence of exhibits showing the receipt by defendant of $500 in postal money orders, because they were not "pleaded" in the amended information, and because of a "lack of venue for the introduction of said exhibits." The latter objection may be disposed of briefly. Apparently counsel means that when Beatrice Mosley deposited the money orders in the mails at Columbus, Ohio, she lost control of them (and her money) then and there, and that any offense arising out of that payment was not committed in the City of St. Louis. We may concede, for the sake of this discussion and without so holding, that were a separate and independent offense sought to be charged because of this $500 payment, there would be no proper venue in St. Louis. Defendant cites State v. Marion, 235 Mo. 359, 138 S.W. 491, and two other cases, as indicating that venue lies in the place where the complainant loses control over his property. In the Marion case, however, the sole offense charged was the procuring, by false pretenses, of a deed mailed from Pennsylvania. The court held that if the deed had then been complete, the venue should have been laid in that state. We need not decide whether the same ruling should be applied to the mailing of a money order. Under the amended information the only payment actually charged to have been made was of $100; it was also alleged, however, that defendant represented to the complainant that he could and would secure a parole upon payment of $600; it seems apparent that the very objection now raised was probably the reason for the amendment which omitted all specific reference to the money orders, since certainly the $100 was paid in the City of St. Louis. The money orders and receipts were only introduced as evidence of the crime charged and not to support or create a separate and independent offense. Under these circumstances "venue" has nothing to do with the admissibility of the evidence. The sole question is whether the exhibits were properly admissible under the amended information. We proceed now to that question.

The remaining contention, based upon a somewhat tardy objection, but also upon what we shall construe as a motion to strike, is that this evidence was not "pleaded nor mentioned in the second substituted information." We construe this, somewhat broadly, to mean that the evidence was not within the breadth and scope of the charge pleaded. We note again, however, that the last and amended information charged a false representation that defendant would and could procure a parole upon payment of $600, not $100. Upon the reception of this evidence, defendant's counsel admitted,

"subject to" his previous objection, that the five money orders were received, endorsed, and cashed by the defendant. It is now argued that the date of the money orders was too far removed in time from the date of the offense charged, they being dated November 28, 1952, thirteen days after the making of the alleged false representations. We think that this gap is sufficiently bridged by the allegation of, coupled with evidence of, the promise originally exacted concerning the remaining $500, to make a total of $600. Counsel cites the case of State v. Barbee, 136 Mo. 440, 37 S.W. 1119, as indicating that this evidence was inadmissible; there, in holding insufficient an indictment for obtaining money from a bank by false pretenses, the court pointed out the various omissions therein, and held that the facts sustaining the elements of the charge must be clearly alleged and that no element necessary for guilt will be presumed. The case is not persuasive here in any sense. The essentials of the crime presently charged were sufficiently alleged and proven; the evidence in question was not offered or received as evidence of any different or additional offense. If the evidence was admissible for any purpose, the court could not exclude it, though counsel now argues that this showing of the receipt of the additional money was highly prejudicial and unnecessary. No instruction was asked limiting the effect of the evidence.

The evidence now questioned was a part of the chain of circumstances involved in and arising from the false representation charged. Generally, in a prosecution for this crime, evidence of a chain or group of transactions is admissible, though extending over a period of days and encompassing different places, if done and made pursuant to a common design or object. State v. Cooper, 85 Mo. 256; 22 C.J.S. Criminal Law § 691, p. 1134. And, generally, evidence which tends to indicate a fraudulent intent in crimes of this nature is admissible (State v. Stevens, 281 Mo. 639, 220 S.W. 844; 29 C.J.S. Embezzlement §

41, p. 736), and considerable latitude therein is allowed. More specifically, however, our courts have permitted evidence to be received in cases of false pretenses and embezzlement to show the receipt of money or goods in addition to that specifically charged. State v. Michels, Mo., 255 S.W.2d 760, 763; State v. Foley, 247 Mo. 607, 153 S.W. 1010 (and cases there cited); State v. Matkins, 326 Mo. 1072, 34 S.W.2d 1. And particularly is this true where the defendant has contended, as here, that money or property was received by him with an honest purpose, and where the additional evidence tends to show scienter or a guilty intent on his part. And see also State v. Fischer, 297 Mo. 164, 249 S.W. 46, 49, where it was held that evidence of the embezzlement and cashing of checks, insufficiently described in the indictment and therefore not a proper part of the charge, was admissible as evidence of criminal intent and of a course of conduct, on the remaining charge of embezzling money. The evidence in question here did not relate to a separate crime, but, under the above authorities, it would have been admissible even if it had, provided it had a tendency to prove a material element of the crime actually charged and on trial. State v. Fisher, Mo., 302 S.W.2d 902, 905; State v. Garrison, Mo., 305 S.W.2d 447, decided concurrently with this case. We think that the money order receipts, the photostats of the money orders and the return receipt were properly received. Were our ruling otherwise, it would be necessary to consider whether defendant and his counsel waived this objection by their admissions and voluntary testimony concerning the receiving, endorsement, and cashing of the money orders, and by volunteering the identification of defendant's various signatures, while nominally reserving the objection. It is entirely possible that the admissions and testimony went beyond the scope of the state's proof so as to constitute an affirmative act of waiver or consent. See, generally, 89 C.J.S. Trial § 661, p. 504. But we need not rule this question.

█ The next point argued and briefed is that the court erred in refusing to grant a new trial on the ground of newly discovered evidence. The trial court is vested therein with much discretion in deciding among other things: (a) whether the evidence newly discovered is so material that it would probably produce a different result; (b) whether the failure to produce it at the trial was due to a want of diligence; and (c) whether it is merely cumulative. State v. Jones, Mo., 221 S.W.2d 137; State v. Sherry, Mo., 64 S.W.2d 238; State v. Vinson, Mo., 107 S.W.2d 16; State v. Thomas, Mo., 82 S.W.2d 885; State v. Brown, Mo., 245 S.W.2d 866. As is the rule in similar matters, an abuse of this discretion should appear in order to justify a reversal. And the courts do not favor the granting of new trials on this ground. Gromowsky v. Ingersol, Mo.App., 241 S.W.2d 60; State v. Bybee, 149 Mo. 632, 51 S.W. 470. The "newly discovered evidence" here consists of a stenographic transcript in question and answer form, taken from Edward Mosley in Detroit, Michigan, by defendant's counsel, about a week after the verdict. It is lengthy, and we shall not elaborate upon it; the principal points sought to be emphasized thereby are that Mosley stated under oath: that the defendant talked to him at the penitentiary about a parole, but did not state that he had "influence" with the parole board, merely stating that "he would see what he could do"; that Mosley knew that one could not "buy" a parole; that he told his wife to take money to the defendant for "expenses," —"maybe five or six hundred dollars," that he also told defendant that his wife would see him; and that the prosecutor made no effort to produce Mosley as a witness at the trial, although he was in St. Louis at the time the first trial started, to the knowledge of someone in the circuit attorney's office who called on the phone. It is also significant to note that this statement shows that defendant was sent to see Mosley by the latter's brother, that Mosley testified before the Grand Jury, and that in this statement Mosley also stated: "* * * I know the score. It is not what you got, it is who you know," and that he thought defendant might "intercede." It is also shown therein that Mosley was in St. Louis for four days immediately after his release on May 4, 1955, while this prosecution was pending, that he then talked to defendant's counsel and told the latter that he was leaving town, but did not state where he was going; also, that Mosley was in St. Louis from July, 1955, until September of that year, working with his brother, and was also in St. Louis from December 30, 1955, to January 11, 1956, at the home of his mother and father, described in one of the present affidavits as "his usual place of abode * * *." Counsel stresses the contention that he tried unsuccessfully to locate Mosley from June, 1955, until after the verdict, and that he made inquiries of the prosecutor's office. It is not shown that counsel made any effort to take or arrange for the deposition of Mosley when he talked to him in May, 1955, or specifically that counsel kept in touch with Mosley's family or relatives in St. Louis thereafter. Under these circumstances the trial court may well have found: (a) that the "newly discovered" evidence would not have been likely to produce a different result, and, (b) that counsel for defendant had not shown reasonable diligence in a bona fide attempt to procure Mosley's testimony, in person or by deposition. We note also that there was no request for a continuance on account of the absence of this witness. Counsel cites the case of State v. Jennings, 326 Mo. 1085, 34 S.W.2d 50, 54, as holding that a new trial should be granted on this ground where the newly discovered evidence is credible and reasonably sufficient to produce a different result or where it is credible and reasonably sufficient to raise a substantial doubt as to the result at another trial. The later cases, already cited, certainly do not emphasize the element of "substantial doubt" as the test of the sufficiency of newly discovered evidence. In any event, however, the sufficiency of this particular evi-

dence was primarily a matter resting in the discretion of the trial court and we decline to interfere with the exercise of that discretion. The contention is denied.

 The last contention to be considered concerns the testimony of Sergeant Schaperkotter of the Highway Patrol, already referred to, during which he related the substance of a conversation with defendant in January, 1954. The only parts of the testimony now complained of to which objections have possibly been preserved consist of: (a) the recital of defendant's rather rambling and voluntary reference to the case in which "Lieutenant Shoulders and Mr. Costello were accused of taking money in the Hall case"; and, (b)—in the continuation of that answer, but after objection and two questions by the court—the statement of defendant, in substance, that he would be glad to be indicted if he got that much money, and to serve two years if he could get $250,000 as an "Internal Revenue Department" man had done, to which the witness and his co-investigator replied that such was not right and that they themselves had offers of bribes in their work. Immediately thereafter counsel said: "Well, I object to that and move it be stricken." The court sustained the objection and motion and specifically instructed the jury "to disregard it." We construe this to have corrected any error which may have inhered in relating that part of the conversation shown in (b) above; if the objection applied to the whole paragraph, then the whole paragraph was stricken; if it applied only to the last sentence, being the remarks of the sergeant, then any objection to the earlier portion was waived, and the last sentence was stricken. The denial of a mistrial, under these circumstances, was wholly discretionary with the trial court. The remaining complaint concerns the reference to Lieut. Shoulders and Mr. Costello and the "Hall case." The objection there was that this had nothing to do with the case and was of no probative value, "just a mere rambling conversation." The objection came after the answer and there was no motion then to strike the testimony. Counsel now argues that this recital was calculated to degrade the defendant in the eyes of the jury, and that it was highly prejudicial; also, that even if relevant on any theory it would have an undue tendency to confuse or mislead and should have been excluded, citing certain texts as authority. Here the witness was attempting to recite the substance of certain long, rambling statements of the defendant, portions of which were clearly admissible; the part now considered was a purely voluntary statement of defendant. Any portions of his statement which tended to show guilt on his part were clearly admissible as admissions against interest. State v. Sinovich, 329 Mo. 909, 46 S.W.2d 877, 881; State v. Page, Mo.App., 192 S.W.2d 577; State v. Daly, 210 Mo. 664, 109 S.W. 53; 22 C.J.S. Criminal Law § 730, p. 1243. Much of the matter related by this witness was of that character. The voluntary interjection of this more or less extraneous matter could not have confused the jury on the facts or issues of the case; we need not decide whether it was strictly admissible. The objection to this testimony was probably inadequate, but we prefer to hold, and do hold, that the reception of these remarks did not constitute prejudicial error. The reference was to something so far removed from the present case that it could not have confused, nor we think, prejudiced the jury.

The formal parts of this record, namely, the amended information, the verdict, and the judgment and sentence are sufficient and in proper form; allocution was duly accorded. The judgment is affirmed.

All concur.