# Wytheville.

## ELLISON V. COMMONWEALTH.

### June 16, 1921.

1.  WITNESSES—*Impeachment—Section 6216, Code of 1919.*—In a prosecution for larceny, one of the principal witnesses against the accused was an accomplice, who, among other things, testified as to defendant's purpose in going from Washington to Virginia when the larceny took place. Witness's attention was called to statements made by him in a prior affidavit relating to the same matter which were in conflict with his present testimony, and he seems to have been asked to explain the conflict, without introducing the affidavit in evidence.

    *Held:* That, under the provision of section 6216 of the Code of 1919, the defendant was not obliged to show the affidavit to the witness at this stage of his examination, and, as witness admitted making the affidavit, was under no obligation to show it to him or offer it in evidence.

2.  WITNESSES—*Impeachment—Section 6216, Code of 1919.*—Section 6216 of the Code of 1919, after providing how a witness shall be examined with reference to a prior writing relative to the subject matter, declares that it shall be competent for the court at any time during the trial to require the production of the writing for its inspection, and the court may thereupon make such use of it for the purpose of the trial as it may think best. This, of course, means legitimate use. It does not *per se* render admissible in evidence a writing which independently of the statute would be inadmissible.

3.  HEARSAY EVIDENCE—*Criminal Law—Previous Affidavit of Witness.*—In a prosecution for larceny, one of the principal witnesses against the accused was an accomplice, who, among other things, testified as to defendant's purpose in going from Washington to Virginia when the larceny took place. Witness's attention was then called to statements made by him in a prior affidavit relating to the same matter which were in conflict with his present testimony, and he seems to have been asked to explain the conflict, without introducing the affidavit in evidence. On re-examination of the witness, the Common-

wealth, over the objection of the defendant, was permitted to offer in evidence and read to the jury the whole of the prior affidavit.

*Held:* That the affidavit was not substantive evidence in the case, but the baldest hearsay, was inadmissible in evidence, and extremely prejudicial to the defendant.

4. EVIDENCE—*Irrelevant Evidence—Evidence as to Other Crimes.*— In a prosecution for the larceny of three cases of shoes, an accomplice testified that he and defendant, a junk dealer, went from Washington to Virginia at the time of the larceny of the shoes to get some brass. On his re-examination he was asked how he got the brass referred to, and replied, "from the railroad."

*Held:* That while this evidence was irrelevant and immaterial to the issue, and on another trial should be excluded, it was not reversible error, as it was harmless.

5. ACCOMPLICES AND ACCESSORIES—*Who is a Principal—Instruction.* —In a prosecution for the larceny of three cases of shoes, the jury were instructed that if they believed that the cases of shoes were removed from a freight car of the railroad "as alleged in the indictment," that defendant aided and abetted in removing the shoes either by his own personal presence or by urging or inciting others to remove them, and that defendant transported the shoes in a conveyance under his control and shared in the fruits of the larceny with knowledge thereof, defendant would be guilty as a principal of the offense alleged in the indictment.

*Held:* That the words "aided and abetted" are legal terms and instead of them the instruction should have stated the acts done by the defendant, or others in which he participated, and that the instruction was open to criticism in other respects.

6. ACCOMPLICES AND ACCESSORIES—*Who is a Principal—Instruction— Indictment as Principal, Conviction as Accessory.*—An indictment charged the defendant as principal in the offense of breaking and entering a car, and not merely as accessory. Under this indictment, the defendant could not have been convicted if the evidence simply showed that he received stolen goods knowing them to have been stolen, and the instruction of the court should have pointed out plainly to the jury what acts or conduct on the part of the defendant were necessary to constitute him a principal.

Error to a judgment of the Circuit Court of Arlington county.

*Reversed.*

The opinion states the case.

*Henry E. Davis* and *Crandall Mackey,* for the plaintiff in error.

*John R. Saunders, Attorney General; J. D. Hank, Jr., Assistant Attorney General,* and *Leon M. Bazile, Second Assistant Attorney General,* for the Commonwealth.

BURKS, J., delivered the opinion of the court.

The indictment in this case charged that the defendant did break and enter in the day time a railroad car with intent to commit larceny therefrom and did steal, take and carry away three cases of shoes of the value of sixty dollars. The defendant was found guilty and sentenced to five years in the penitentiary.

The Commonwealth relied upon two alleged accomplices, Ballinger and Powell, as witnesses to prove its case. They concur in the main, but Ballinger's testimony is the fuller of the two, and most of the controversy occurred over his testimony, and hence his version of what took place will be given. His statement is as follows:

"In 1916, either in the spring or fall of that year, he met defendant one day at defendant's place of business in Washington, D. C., and told the defendant that he witness, had some brass over in Virginia and invited defendant to go over to Virginia to buy the brass. Defendant agreed to this, and from defendant's junk shop he and witness went to a blacksmith's shop where defendant's buggy was being repaired, and at either the junk shop or blacksmith shop witness and defendant were joined by Clarence M. Powell and the three went in defendant's buggy to Virginia. On arriving at the place where witness had put the brass, it was found that

someone had taken it, and witness, defendant and Powell, all three of whom were in the buggy owned and driven by defendant, started back on the road to Washington. Someone in the party then said: 'Can't you get something?' The said remark was made by one of the three but he did not recall which one. The remark was made in the presence of defendant. At the time the said remark was made they were driving along the road parallel to the Potomac yards and immediately adjoining the same, and at a point near what is known as Luna Park or the old power house. Defendant, who was driving, pulled up on the side of the road next to Potomac yards. Witness and Powell then left defendant in the buggy and went over into the yards, while defendant was waiting, and opened a car and got out three cases of shoes. They left two boxes of shoes in a gondola in the yards and took the third over to the road and put it into the buggy in which the defendant was waiting. They then drove a short distance down the road and someone in the party proposed that they should take the shoes out of the box and put the same into a sack which was in the buggy. Witness thinks defendant was the one who proposed this. In accordance with the suggestion they took the shoes out of the box and put them into the sack and threw the box away.

"Defendant then drove the buggy back to his place of business in Washington, and defendant and witness then took the shoes into defendant's junk shop and defendant then paid the witness the sum of ten dollars for the shoes. Witness's recollection was not entirely clear as to the amount, but he thought it was ten dollars. Defendant told witness that he and Powell could take the buggy back for the other shoes which had been left in the gondola. Witness and Powell then drove back to the Potomac yards in the defendant's buggy, but, upon arriving there, they found that the shoes had been removed from the gondola

and witness and Powell then returned to Washington without them."

[1-2] The witness stated on his cross-examination "that the object of the party in going from defendant's place to Virginia was to get the brass, and that that was the only idea of the party when starting, and the idea of obtaining anything else was formed after they had come to Virginia and had failed to find the brass." The attention of the witness was then called to certain statements made by him in a prior affidavit relating to the same matter which were in conflict with his present testimony, and he seems to have been asked to explain the conflict, without introducing the affidavit in evidence. The evidence is given in the record in narrative form, and what took place is thus detailed in the record:

"His attention was then called to the following statements in his affidavit of May 3, 1917, and the fact that the identically same statements were contained in his affidavit of April 24, 1917, namely:

"On the 21st day of September, 1916, I went to the place of business of Edward Ellison at 417 3rd street, S. W., in the city of Washington, D. C., with a companion, and there proposed to the said Edward Ellison that he should take his buggy and horse over into Virginia, where we would break and enter a car in Potomac yards, in Alexandria county, and take from the car such merchandise as we might find, and dispose of the same;" that "the said Edward Ellison, on the said date, at once assented to the proposition put forth by me and took his horse and buggy and drove me and my companion over into Alexandria county and down to the Potomac railroad yard."

"Having heard these statements read to him, he repeated that the object of the party in going from defendant's place of business to Virginia was to get the brass, and admitted that each of the two statements so read to him was

false, and that when the party started there was nothing said about going to break into a car."

Under the provision of section 6216 of the Code the defendant was not obliged to show the affidavit to the witness at this stage of his examination, and as he admitted making the affidavit, was under no obligation to show it to him or offer it in evidence. The sole object of the defendant was to contradict the witness by his prior inconsistent affidavit and this was accomplished when he admitted its execution and the contradictions therein contained. The statute, after providing how the witness shall be examined with reference to the writing, declares that "it shall be competent for the court at any time during the trial to require the production of the writing for its inspection, and the court may thereupon make such use of it for the purpose of the trial as it may think best." This, of course, means legitimate use. It does not *per se* render admissible in evidence a writing which independently of the statute would be inadmissible.

[3] On the re-examination of the witness, the Commonwealth, over the objection of the defendant, was permitted to offer in evidence and read to the jury the whole of said affidavit. The affidavit is as follows:

"I, John D. Ballinger, a witness of lawful age, being first duly sworn, upon my oath, do state as follows: That I am a resident of the county of Alexandria, State of Virginia; that on the 21st day of September, 1916, I went to the place of business of Edward Ellison at 417 3rd street, S. W., in the city of Washington, D. C., with a companion and there proposed to the said Edward Ellison that he should take his buggy and horse over into Virginia, where we would break and enter a car in Potomac yards, in Alexandria county, and take from the car such merchandise as we might find, and dispose of the same; that the said Edward Ellison was in the junk business and handled any-

95

thing that was of any value without regard to whether it was stolen property or not; that the said Edward Ellison, on the said date, at once assented to the proposition put forth by me and took his horse and buggy and drove me and my companion over into Alexandria county and down to the Potomac railroad yard; that the said Edward Ellison then waited in the road and watched while my companion and I went a short distance from the road and broke open a car of the Washington-Southern Railway Company; we took from the said car three cases of shoes and brought one of them back to the buggy where the said Edward Ellison was watching and waiting; that we placed one of the said cases of shoes in the said buggy and left the other two hidden in a gondola to be gotten at a later trip; we then drove to the place of business of the said Edward Ellison and left the case of shoes there. My companion and I then returned after the other two cases of shoes and found that the officers in Potomac yard had discovered them and were removing the boxes to a building in the yard. We then returned to Ellison's place of business, delivered to him his horse and buggy and received an amount of money agreed upon for our interest in the said shoes. The said Edward Ellison was a party to the crime. We planned it in his presence and with his knowledge and consent; he went with us and watched and waited for us and brought the shoes back to Washington and disposed of them. I was well acquainted with him, having sold stolen goods to him a number of times before, and having been present with others when they sold stolen goods to him. The said Edward Ellison was in Alexandria county, Virginia, at the time of the commission of the crime, and aided and abetted the commission thereof."

This affidavit was not substantive evidence in the case, but the baldest hearsay, was inadmissible in evidence and was extremely prejudicial to the defendant. It was

error in the trial court to admit it, and for this error its judgment must be reversed.

The question of when a party may introduce the whole of a writing, a part of which has been introduced by his opponent, so much discussed at the bar, does not arise, as no part of the affidavit was put in evidence by the defendant.

[4] The witness, Ballinger, was also asked, on his re-examination where and how he got the brass referred to in his examination in chief, and he replied to each, "from the railroad." The questions were irrelevant and immaterial to the issue, and on another trial should be excluded, but we would not reverse the judgment in this case for that error, if that were the only error assigned. It was harmless.

The only other error assigned which need be noticed is the granting of the following instruction for the Commonwealth:

[5-6] The court instructs the jury that if they believe from the evidence that the case of shoes alleged to have been stolen was removed from a freight car of the Washington-Southern Railway in the Potomac yards, as alleged in the indictment; that Edward Ellison, the defendant, aided or abetted in removing the said shoes either by his personal presence or by urging or inciting others to remove said shoes from said car; and that the said Edward Ellison transported the said shoes from the said Potomac yards in a conveyance under his control and shared in the fruits of the larceny with knowledge thereof, that under such circumstances the said Edward Ellison would be guilty as a principal of the offense alleged in the indictment."

It is doubtful if the jury fully understood the words "as alleged in the indictment" as descriptive of the method of removal of the shoes. The instruction should have stated the acts done by the defendant. The words "aided and abetted" are legal terms and instead of them the instruction

should have stated the acts done by the defendant, or by others in which he participated. "Aided and abetted * * * by his personal presence," was clearly misleading. Here again, the jury should not have been left to their own judgment as to what constituted aiding and abetting, or how his mere presence could have involved him in the commission of a crime. As to aiding and abetting by "urging or inciting others to remove said shoes from said car," there was no evidence to support the allegation of "urging" which is intimately associated with "inciting," and even as to the latter, it would have been far better to have given the jury some idea of what constituted "inciting." The indictment charged the defendant as principal in the offense of breaking and entering the car, and not merely as accessory. Under this indictment, the defendant could not have been convicted of the breaking and entering if the evidence simply showed that he received stolen goods knowing them to have been stolen, and the instruction of the court should have pointed out plainly to the jury what acts or conduct on the part of the defendant were necessary to constitute him a principal. *Thornton* v. *Com.*, 24 Gratt. (65 Va.) 657. This it failed to do.

For the errors pointed out the judgment of the circuit court will be reversed.

*Reversed.*