## UNITED STATES v. HARRIS et al.
### No. 156.

Circuit Court of Appeals, Second Circuit.
Dec. 5, 1930.

Leary & Fullerton, of Saratoga Springs, N. Y. (Morris Kamber, of New York City, of counsel), for appellants.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg, Henry G. Singer, and Emanuel Bublick, Asst. U. S. Attys., all of Brooklyn, N. Y., of counsel), for the United States.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

On July 30, 1929, a fire broke out at 42 Verona street, Brooklyn, N. Y., at about 10:45 a. m. When the firemen responded to the call, it was discovered that the premises were used for manufacturing liquor. Pipes ran from the building through the walls into adjoining premises, where empty cans and a tank containing fluid, drums of lacquer, and lacquer thinner were found. Samples were taken which showed intoxicating liquors in various stages of distillation, some fit for beverage purposes and others not. The setup was described as one to recover alcohol from lacquer thinner. Apparently no one was about who occupied the premises, but there was testimony that the police officer found appellant Sosnick at a nearby corner. When interrogated, he stated that he was looking for a job and lived in New Jersey. He was dressed in a workingman's apparel. Appellant Harris was found at about 12:45 p. m. with one Carlucci, who was indicted but not placed on trial, in an automobile. Carlucci was interrogated by a police officer at the time and directed to drive to the premises: Harris resented so doing, but did so under orders from the policeman. Appellants Barenbaum and Cipollari were found at 11:30 a. m. standing in front of the premises. When interrogated, Barenbaum said he lived at Coney Island, and Cipollari said he lived in the Bronx. Both said they were looking for work, and one had formerly worked in a shipyard. They were dressed in workingmen's apparel.

Apart from their appearance in the vicinity of the premises under these circumstances, there was evidence of two witnesses, one of whom owns the premises and the other who worked for the owner, that several times they saw the four appellants loading and unloading trucks and handling drums. They did not know what was in the drums. They knew neither of the appellants by name, nor were they certain as to the time.

There is ample evidence to justify a jury in finding that the premises had been used in manufacturing liquor in violation of title 27, U. S. Code, § 12 (title 2, § 3 of the National Prohibition Act, 41 Stat. 308 [27 USCA § 12]). The statute forbids the manufacture of intoxicating liquors except as au

thorized. The appellants were convicted for manufacturing only.

A coat found on the premises was said to match in color (brown) and weave the pants that Barenbaum was wearing. The owner of the premises, who testified to seeing the four appellants wheeling drums, at first denied having seen them rolling the drums and loading and unloading them in the yard. Testimony of a police officer was received to the effect that, when the owner of the premises was interrogated at the time he stated his inability to identify the four appellants as the men he saw rolling the drums, he was nervous, scared, and afraid, and very much upset. This, of course, was a conclusion of the witness. It was offered for the purpose of lending credibility to the statement of the owner of the premises at the time he did identify them, and indicated a reason why he did not tell the truth when first asked. The credibility of this witness was for the jury, and the conclusion as to his condition and appearance was improper. However, we do not reverse for this alone.

The case was close on the evidence. The testimony against the four defendants was meager, and, while it may be conceded that the premises were illegally used for the manufacture of liquor, the appellants' connection, circumstantially sought to be established, rested in its strongest aspects, upon the theory that they were laborers working about a plant unlawfully used in the manufacture of intoxicating liquors. There is no evidence that they knew the liquor was being manufactured there. Their connection therewith was left to inferences to be drawn by the jury.

In the charge there is no suggestion that the jury must find that they had knowledge that alcohol was being there manufactured. The court charged: "Has the government through its witnesses established beyond a reasonable doubt that these men are in some way connected with these premises, and, if so, in what way?"

The jury may have thought that merely working there without knowledge was enough to convict them. Where the evidence is meager, the court should be astute to see that the charge advised the jury of all the essential elements of the crime.

The appellee offered the testimony of a police officer who said Carlucci asked him in the presence of Harris: "* * * Officer, cannot we make a fix here? I told him, I said, what do you mean fix? He said, close the doors at 42 Verona Street. I told

him, nothing doing. I said, go right back to the scene of the fire at 42 Verona Street. He said, Jesus, I cannot go back there. I said you are going back, and I jumped on the dashboard, on the side of Carlucci, and I made him drive back to the scene of the fire."

Harris in no way participated in this discussion, nor was it shown that Carlucci in any way spoke for him. The silence of Harris, although he was present when the conversation occurred, under circumstances which did not call upon him to speak, was not admissible against him. Di Carlo v. United States, 6 F.(2d) 364 (C. C. A. 2); Sorenson v. United States, 168 F. 785 (C. C. A. 8). Harris was not driving the car in which they were seated. It was Carlucci's car, and, when the officer ordered him to go to the premises, Harris resented being taken along and asked why he was being required to go.

In this state of the proof, appellants' guilt as found by the jury depended entirely upon the inferences of guilt to be drawn by the jury because of their proximity to the plant at the time of the fire and their having been identified as having worked there on previous occasions. Illegal evidence of an attempt of bribery by one of the defendants, who fled, and whose flight was made known to the jury, made in the presence of one of the four, was prejudicial, and requires a reversal of the conviction as to each appellant.

Judgment reversed.