**MORRIS v. UNITED STATES.**

No. 10967.

Circuit Court of Appeals, Ninth Circuit.

June 27, 1946.

Rehearing Denied Aug. 19, 1946.

DENMAN, Circuit Judge, dissenting.

Morris Lavine and Mario Perelli-Minetti, both of Los Angeles, Cal., for appellant.

Charles H. Carr, U. S. Atty., James M. Carter and Ernest A. Tolin, Assts., and William Strong, Sp. Asst., to the U. S. Atty., all of Los Angeles, Cal., for appellee.

Before GARRECHT, DENMAN and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

William Morris was informed against in four counts and went to trial before a jury under his plea of not guilty as to each count. At the conclusion of the government's case, defendant made a motion for directed verdicts as to each count, but the court, with the tacit acquiescence of defendant and the government, treated the motion as one to dismiss, and granted it as to Counts 3 and 4, and denied it as to Counts 1 and 2.[1]

Counts 1 and 2 each charge the violation of the Emergency Price Control Act of 1942 as amended, 50 U.S.C.A.Appendix, § 901 et seq., and Regulations thereunder, in that false entries were made in statements as to sales made, that is, that the entries as to each sale show the price paid for oranges as $4.50 per box, whereas each sale was made for $5.50 per box.

Before trial appellant demurred to the sufficiency of the information and moved to quash and set it aside, but the court refused relief as to both pleadings. After the first witness had been sworn appellant again objected to the sufficiency of the information. The court overruled the objection after granting the government's motion to amend, so that the information should contain the allegation that Maximum Price Regulation 292, as amended, had been approved by the Secretary of Agriculture. Morris' motion for a new trial was denied and sentence was pronounced. He appeals from the judgment.

There is evidence to the effect that a man named Arrigo made two purchases, each of a carload of oranges from Morris Brothers Fruit Company, a partnership, after directly negotiating with appellant as to price, and received two "statements" prepared by a Morris Company office employee, each stating the price received as less than that actually received as above stated. Arrigo testified that he paid the total of $6,402 in six separate checks. Appellant admits the sale of the oranges but contends there was but one transaction or sale and testified that the price asked and received was $4.50 per box and no more. Appellant also testified that the two statements were prepared by a partnership employee, who computed the price, and that he gave no direction as to entries upon the statements.

All emphasis indicated in this opinion is ours.

Several questions are presented on appeal, which we do not reach. It is our opinion that the trial court committed fatal error in failing to instruct the jury on the statutes and regulations defining and governing the offenses charged against the appellant. No assignment of error was made at the trial covering this claimed error, but we consider it because, as is well stated in Suhay v. United States, 10 Cir., 1938, 95 F.2d 890, 893, "* * * Where life or liberty is involved, an appellate court may notice a serious error which is plainly prejudicial even though it was not called to the attention of the trial court in any form." In a criminal case, it is always a duty of the court to instruct on all essential questions of law, whether requested or not. See Screws v. United States, 1945, 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495; Corson

---

[1] The motion for a directed verdict was the appropriate motion, and the motion to dismiss was not proper in the circumstances. However, it is provided in the new Federal Criminal Procedure Rules (Rule 29) that "Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place." The granting of a motion to dismiss after the swearing of a witness in a criminal case would leave the question of once in jeopardy open upon a different proceeding for the same offense but would not be res judicata. The verdict in accord with the judge's direction would be res judicata. In the text of the opinion we do not discuss the right and duty of the trial judge to set aside verdicts of conviction in criminal cases in proper circumstances.

v. United States, 9 Cir., 147 F.2d 437; Kreiner v. United States, 1926, 2 Cir., 11 F.2d 722, certiorari denied 271 U.S. 688, 46 S.Ct. 639, 70 L.Ed. 1152.

The court did not define the offense of which the appellant was charged and was being tried, and the jury was given no opportunity of applying the facts to the law. Instead, the judge reserved to himself the duty of applying the law to the facts. The court told the jury: "If you believe beyond a reasonable doubt that on or about October 27, 1943, the defendant sold five hundred and eighty-two boxes of oranges to Aldrich & Company at a price of $5.50 per box, or for a total sum of $3,619.00, and that said transaction was on behalf of Morris Brothers Fruit Company, and that defendant wilfully and deliberately, and not as a result of innocent mistake entered upon said Morris Brothers Fruit Company's copy of a statement showing such sale, an entry that the sale had been made at a price of $4.50 per box or a total sale price of $2,619.00, and that the statement was made in a record of the kind customarily kept by Morris Brothers Fruit Company during the time prior to January 11, 1943 (effective date of Regulation) then you will find defendant guilty * * *. The court instructs you that the regulation under which this case arose, Maximum Price Regulation 292 was promulgated by the Price Administrator on December 31, 1942, to become effective January 11, 1943, and was duly approved by the Secretary of Agriculture before its promulgation, and that all this was done pursuant to the authority granted by the Congress of the United States in the Emergency Price Control Act of 1942 as amended." The jury was never given an explanation or definition or enacted text of the offense charged, but instead were told that if they found certain enumerated facts, the verdict must be one of guilty; otherwise the verdict must be one of not guilty. A jury's duty cannot be so limited by a judge. There is no better grounded instruction than the one used in every criminal jury trial, including this one, that the court gives the law to the jury and the jury applies it to the facts. Here, by the instruction, quoted, the judge reserved the law to himself and told the jury that the law applies in a certain manner defined by him to sets of facts which the jury may or may not find.

The origin of the jury as a means of deciding issues is a subject of much diversity of opinion. Whether or not it was brought to England by Northern tribes, as many writers believe, or by the Normans, as Holdsworth believes (1 Hist. of Eng. Law, p. 145), or whether it is a true native of Britain, is interesting but of no great practical importance. We do know it is spoken of in Magna Charta as a bulwark of English liberty.

An American speaks of the jury system as "Springing up under the feudal despotism of the Plantagenets, it has survived alike their rule, that of the House of Tudor, and of the House of Stuart, and now flourishes with all its original vigor under the mildest and wisest form of monarchy of which history makes mention; while during the same period, transplanted to a different hemisphere, it has struck deep its roots into the new soil, and is, perhaps, the most cherished institution of the greatest exemplar of free and intelligent government that the world has ever seen."—Sedgwick, The Construction of Statutory and Const. Law (1874) (2d Ed. by Pomeroy), p. 482.

In early times the English jury consisted of a body of neighbors summoned by a public officer to give an answer to a question upon oath. Originally the jury comprised witnesses largely under the control of the judge. In the beginning there was no sharp cleavage between law and fact, but in time the applicable law was given and explained by the judge and the jury combined the law and fact to form a verdict. See Holdsworth, History of English Law, pp. 156 et seq.; Thayer, Evidence, p. 185; Farley, Instructions to Juries—Their Role in the Judicial Process, 42 Yale Law Journal 194. Holdsworth in his History of English Law said (Vol. I, p. 168): "Judges must explain the law to the jury. They must *separate* the rule of law from the question of fact. This produces both precision in the statement of the rule, and a clear outside judgment on the facts." Thus, at an early stage in legal history we find the judge duty bound in his position to give instruction on

the law to the jury. He was privileged to suggest or give examples as to how the law might be applied, but this after or in conjunction with the offense charged had been defined to the jury. It remained the duty and the privilege of the jury to apply the law. In fact it has been stated as far back as the Year Books that the judge delivered charges on the law to the jury. Scott, Trial by Jury and the Reform of Civil Procedure, 31 H.L.R. 669. Both in England and the American Colonies the jury system of trials is regarded as a bulwark of liberty, and the American tendency of the practice under the jury system, influenced by American popular sentiment, has generally been toward the limitation of the judges' powers and enlargement ·of those of the jury. Ibid.

■ The classical practice is that the judge delivers the applicable· law of the case, defining and explaining the offense charged against the defendant, and the jury thus being informed as to the exact law, which they must determine has been or has not been violated by the defendant, places its determination of the facts alongside the law and reports in the open court in a single verdict of "guilty" or "not guilty." Sparf v. United States, 1895, 156 U.S. 51, 715, 15 S.Ct. 273, 39 L.Ed. 343; 1 Randall, Instructions to Juries, §§ 1, 97, 118; Hughes, Criminal Law and Procedure, pp. 693, 696. Instructions upon the law have been repeatedly defined as statements or announcements of the *rules of law* to be applied by the jury to the facts found by them. 1 Blashfield, Instructions §§ 1, 4; 2 Bishop, New Crim.Pro., §§ 978, 982c.

The jury system, as one authority has said, is "broadly buttressed upon political, sociological and historical reasons" and it may not be overthrown upon mere considerations of efficiency, personal whims of the court, or other conceived convenience or possible advantage. 1 Randall, Instructions to Juries, § 3. The jury is not an outmoded instrument used by an early society to escape the arbitrariness of autocratic rulers, but is a functioning institution, so rich in the traditions and basic principles of our highly developed, freedom-loving civilization that it is in truth an important element in and of our civilization. Randall, in Vol. 1, § 2, of Instructions to Juries, expresses the idea that the jury should not be reduced to a mere ministerial agent of the court, and the courts must realize the importance of the jury and its functions as equal to their own.

■ Where the instruction or charge of the court is based upon a statute which is sufficiently clear, the judge may set forth the statute in the instruction, otherwise he should explain it in other language in order that the jury may have a clear understanding of the law before *applying it* to the facts. See Sloovere, Functions of the Judge and Jury in the Interpretation of Statutes, 46 H.L.R. 1086.

■■ The charge to the jury should not leave the jurors in ignorance of or leave them to their conjecture as to what constitutes the offense charged.[2]

■ The jury must not be reduced to the position of a mere ministerial agent by a direction on their very thought, thereby withholding of a vital right due them. And the judge may not pass judgment on the ability of a jury to correctly act in any given situation and in his discretion limit their historic province. Worthington, in his Power of Juries, p. 138, says: "Juries

---

[2] An instruction which does not state any proposition of law, or only states the result of the law's application, is erroneous. See Screws v. United States, 1945, 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495; Bird v. United States, 1901, 180 U.S. 356, 361, 21 S.Ct. 403, 45 L.Ed. 570; Sparf v. United States, 1895, 156 U.S. 51, 715, 15 S.Ct. 273, 39 L.Ed. 343; Corson v. United States, 9 Cir., 1944, 147 F.2d 437; Christensen v. United States, 7 Cir., 1937, 90 F.2d 152; United States v. Harris, 2 Cir., 1930, 45 F.2d 690; Kreiner v. United States, 2 Cir., 1926, 11 F.2d 722; Allen v. Roydhouse, D.C.Pa.1916, 232 F. 1010; Massee v. Williams, 6 Cir., 1913, 207 F. 222; 3 Blackstone, Commentaries 375; 23 C.J.S., Criminal Law, §§ 1189, 1190(b); 53 Am.Jur. § 509; Farley, Instructions to Juries, 42 Yale L.Jour. 194; Reid, Branson's Instructions to the Jury, Vol. I, § 2; Clark, Criminal Procedure, §§ 174–176.

\* \* \* must apply matter of fact and law together, and form their consideration of, and a right judgment' upon both." At page 187 the same author says: "It is the province of a jury to ascertain the fact, under the direction and assistance of the judge, and to decide whether the fact be well proved. Ordinarily the judge declares to the jury what the law is upon the fact, which they find, and then *they compound* their verdict of the law and fact thus ascertained."

Juries do, however, have decisions to make that are not wholly factual. "Lord Mansfield, the great prerogative lawyer of the last age, admits, that 'a Jury, by means of a general verdict are entrusted with a power of blending law and fact, and of following the prejudicies of their affections or passions. It is the duty (says he) of the Judge, in all cases of general justice, to tell the Jury how to do right, though they have it in their power to do wrong, which is a matter entirely between God and their own consciences.'—Argument in the Dean of St. Asaph's Case." Phillips on Juries, p. 172.[3]

Moschzisker, in his Trial by Jury (2d Ed.), p. 235, put it in this manner: The conclusion of jurors is not just the decision of twelve men, but it is a *verdict*. They act within the term quasi-judicially in that they collect testimony, weigh it and state the *net result* by means of a verdict.

---

[3] Worthington, in his Powers of Juries, pp. 137–140, quotes from Sir John Hawles' celebrated pamphlet, published in 1680, as follows: "Jurors are judges of matter of fact; that is their proper province, their chief business; but yet not excluding the consideration of matter of law, as it arises out of, or is complicated with, and influences the fact; for to say they are not at all to meddle with, or have respect to law in giving their verdicts, is not only a false position, and contradicted by every day's experience, but also a very dangerous and pernicious one, tending to defeat the principal end of the institution of juries, and so subtly to undermine that which was too strong to be battered down. Though the direction as to matter of law separately may belong to the judge, and the finding the matter of fact does peculiarly belong to the jury, yet must your jury also apply matter of fact and law together, and, from their consideration of, and a right judgment' upon both, bring forth their verdict: for do we not see in most general issues, as upon not guilty pleaded in trespass, breach of the peace, or felony, though it be matter in law whether the party be a trespasser, a breaker of the peace, or a felon, yet the jury do not find the fact of the case by itself, leaving the law to the court, but find the party guilty or not guilty generally? So, as though they answer not to the question singly, What is law? yet they determine the law in all matters where issue is joined. So likewise, is it not every day's practice, that when persons are indicted for murder, the jury does not only find them guilty or not guilty, but many times upon hearing and weighing the circumstances, brings them in either guilty of murder, manslaughter per infortunium, or se defendendo, as they see cause? Now, do they not herein completely resolve both law and fact? And to what end is it, that when a person is *prosecuted upon any statute, the statute itself is usually read to the jurors, but only that they may judge whether or no the matter be within that statute?* But to put the business out of doubt, we have the suffrage of that oracle of law, Littleton, who, in his Tenures, sect. 368, declares—That if a jury will take upon them the knowledge of the law upon the matter, they may; which is agreed to likewise by Coke, in his comment thereupon. And therefore it is false to say, that the jury hath not power, or doth not use frequently to apply the fact to the law, and thence taking their measures, judge of and determine the crime or issue by their verdict. As juries have ever been vested with such power by law, so, to exclude them from, or disseise them of the same, were utterly to defeat the end of their institution: for then, if a person should be indicted for doing any common innocent act, if it be but clothed and disguised in the indictment with the name of treason, or some other high crime, and proved by witnesses to have been done by him, the jury, though satisfied in conscience that the fact is not any such offence as it is called, yet, because according to this fond weak opinion, they have no power to judge of law, and the fact charged is fully proved, they shall at this rate be bound to find him guilty; and being so found, the judge may pronounce sentence against him, for he finds him a convicted traitor, &c. by his peers \* \*." See Cooley on Court Law, 4th Ed., p. 313; Cooley on Constitutional Limitations, 8th Ed., Vol. I, pp. 676–680; Willoughby, Constitution of the United States, 2nd Ed., Vol. 2, § 698.

The jury in rendering their decision pronounce judgment on all the issues in favor of the plaintiff or defendant, drawing the law from the charge by the judge and the facts from the evidence. Thus their decision embodies both the law and the fact, and where the court finds that it is proper, will enter it for the prevailing party.

 If the judge were permitted merely to tell the jury, as was done in this case, that upon the finding of certain facts their verdict would be guilty of the offense charged without acquainting them with the charge,[4] or upon the finding of certain other facts the verdict would be not guilty of the offense charged, the jury would never know whether or not the facts they found had any relation to the offense charged. The verdict is not merely a report upon the facts; it is a legal decision that the facts laid before them do or do not fit the essential elements of a social proscription, the violation of which entails a penalty. United States v. Corson, supra; United States v. Levy, 3 Cir., 153 F.2d 995. It has been stated that when a person is prosecuted under any statute the statute is usually read to the jurors, but only that they may judge whether or not the matter be within that statute. Worthington, Power of Juries, p. 139.

 It has been repeatedly stated that the jury are bound to take the law from the court as announced by it in the instruction, Abbott, Civil Jury Trials (5th ed.), p. 931, hence, we may conclude that a charge which fails to give any law but simply instructs a verdict upon proof of certain facts is bad. A jury may not justifiably find a verdict until they are instructed on the law, sufficiently to show them what is necessary for proof.

"The jury is in no sense the agent of the judge. They both derive their origin from the same high source, and the judge in laying down rules to guide the jury in their deliberations, merely acts as the mouthpiece of the law for the purpose of marking out a definite and clearly ascertained path by which the ends of justice are attained." 1 Randall, Instructions to Juries, p. 3. At page 5 of the same work it is said that the *composite decision of law and fact* is thus rendered by the jury after they have been duly instructed. Their verdict is but a reflection of such action. See 42 Yale Law Journal 194, 205–210.

 Thus, we see it is at least as much the right and the duty of the jury to see to it that their verdict is a proper result from the compounding of the law and fact as it is the duty of the judge. If the facts are not sufficient to support the verdict, the judge will set it aside. If there is no law supporting the judicial instruction to convict or acquit, it is the duty of the jury to acquit. It is self evident that the jury must have the law given to it in order that it can perform its function.

In the "apology" of Phillips in his interesting little book on Juries, the author says: "Idolizing the institution as the

---

[4] In the course of our research we have read decisions upon the point as to whether mere reference by the judge in his instructions to the information or indictment, which is handed the jury to take to the jury room, is sufficient information as to the offense charged. And the great weight of authority is that such practice is not sufficient. The court must directly and not by reference to a document in the jury's possession define the offense charged in clear and precise language. Literell v. Commonwealth, 266 Ky. 235, 98 S.W.2d 909; State v. Bater, Mo.Sup., 232 S.W. 1012; State v. Herring, 268 Mo. 514, 188 S.W. 169, 175; State v. Constitino, Mo.Sup., 181 S.W. 1155; State v. Marion, 235 Mo. 359, 138 S.W. 491, 496; Upton v. State, 143 Miss. 1, 108 So. 287; Lane v. State, 14 Ala.App. 40, 70 So. 982; Territory v. Baca, 11 N.M. 559, 71 P. 460; State v. McKnight, 21 N.M. 14, 153 P. 76; Ellison v. Commonwealth, 130 Va. 748, 107 S.E. 697; 1 Randall, Instructions to Juries, § 406; 1 Reid's Branson Instructions to Juries, § 99; 23 C. J.S., Criminal Law, § 1194. Whether or not in addition to a sufficient instruction upon the offense charged it is error for the court to give an instruction to the jury that they may read the charge as it is set out in the indictment does not appear to have been widely considered. The case of Thompson v. State, 158 Miss. 121, 130 So. 112, discusses the point and compares cited cases. The case holds that if the offense is set up in the indictment in prolix terms likely to confuse the jury it would be error.

sheet anchor of the freedom, happiness, and prosperity of his country, he has suffered much affliction in observing that the modern spirit of Law and Legislation, tends in many instances either to the disuse of Juries, or to the diminution of their authority. Every man agrees in venerating the system; but all are not equally sensible of the silent encroachments which are undermining it * * *."

■ Rather persuasive arguments are made from time to time for the streamlining of the jury system in the interest of efficiency or upon the ground of ineptness of jurors. However, thoughtful and scholarly lawyers and judges, including the very learned judge who presided in the instant case, have fought to preserve the system in its natural vigor. The method used in the instant case loses its surface merit upon a study of the principles underlying the judge and jury system of judicature.

Reversed and remanded.

DENMAN, Circuit Judge (dissenting).

From the extended review in the court's opinion of the history of the law respecting the obligation of the trial court to litigants in a criminal prosecution with respect to instructions to the jury, it is apparent that the denial to the United States of its verdict and judgment is one of major importance. However, the grave considerations stressed by the court were discovered by it sua sponte and were not presented or considered in argument or briefs by either of the parties to the litigation.

I dissent from denying to the United States its right in this appellate court to present its views on this unraised contention and thus tend to frustrate it in its difficult task of enforcing the price control legislation. In the earlier period of Anglo Saxon law, reviewed by the court, the discussion of "star chamber" proceedings had a vital place in the struggle for judicial freedom. The essence of star chamber procedure is that the litigants learn of the matter in issue and the judgment thereon only after the judgment against them is rendered.

I dissent further from what I regard as a misapplication of the rule in this circuit respecting our sua sponte consideration of matters not urged in the court below and, a fortiori, matters not urged here. Its statement is in Judge Rudkin's opinion in the leading case of Marco v. United States, 9 Cir., 26 F.2d 315, 316, and recently repeated in Giles v. United States, 9 Cir., 144 F.2d 860, 861. The rule in the Marco case is "The sufficiency of the testimony to support the verdict was not raised at the conclusion of all the testimony in the court below, and for that reason the question is not properly before us for review. Under such circumstances courts will only look into the record far enough to see that there has been no miscarriage of justice, or that there is some testimony tending to support the verdict." [26 F.2d 316.]

It is obvious that if Morris had committed the acts described in the hypothetical alternative in the charge so challenged alone by the court, he was in fact guilty. Hence there was no "miscarriage of justice" and no occasion for a sua sponte consideration of the instruction. Morris is represented here by one of the most experienced practitioners in criminal cases at the circuit bar. He saw nothing of the character found by the court in the instruction to cause him to claim here that an injustice had been done his client.

I further dissent from the court's selecting only a part of the keen and able district judge's instruction respecting the nature of the offense he described to the jury. The discussion in this court's opinion seems to command the inference that the instruction was so meager the jury may never have realized that Morris was charged with any crime. The omitted portions of the instruction, showing the contrary, are [1]

"This duty you should perform uninfluenced by pity for the defendant or by passion or prejudice on account of the nature of the charge against him. * * * Both the public and the defendant have a right to demand, and they do so demand

---

[1] Besides this the court gave other instructions covering six printed pages.

and expect, that you will carefully and dispassionately weigh and consider the evidence and the law of the case and give to each your conscientious judgment; and that *you will reach a verdict that will be just to both sides,* regardless of what the consequences may be. The offense with which the defendant is charged is: Violation of the Price Control Act of 1942.

"The court instructs you that the regulation under which this case arose, Maximum Price Regulation 292, was promulgated by the Price Administrator on December 31, 1942, to become effective January 11, 1943, and was duly approved by the Secretary of Agriculture before its promulgation, and that all this was done pursuant to the authority granted by the Congress of the United States in the Emergency Price Control Act of 1942, as amended." (Emphasis supplied.)

It is obvious that here the District Court was instructing the jury concerning the issue presented by the criminal information and that it charged a violation of the Price Control Act of 1942 and particularly of Maximum Price Regulation 292.

The majority opinion states the elementary rule that the District Court need not read the law and regulations to the jury if not sufficiently clear in themselves, but must explain them in other language in order to have a clear understanding of the law when the jury applies it to the facts. In my opinion the district judge did so in the usual manner of trials in this circuit and in full satisfaction of the court's obligation to the litigants.

In this connection, I further dissent from the omission in this court's opinion of the following instructions to the jury:

" * * * I shall leave the determination of the facts in the case to you, satisfied as I am that you are fully capable of determining them without my aid. However, it is the exclusive province of the judge of this court to instruct you as to the law that is applicable to the case, in order that you may render a general verdict upon the facts in the case, as determined by you, and the law as given you by the judge in these instructions. * * *

" * * * You are to be governed, therefore, solely by the evidence introduced in this trial, and the law as given you by the court. * * *"

It is apparent that the district judge did not require the historical review to apprise him of this elementary rule which has controlled federal judges since the Constitution was adopted. The portion of his instruction so taken from the context and challenged sua sponte by the court, is cast in the hypothetical alternative form customarily used by all courts, federal and state, as shown by the text books cited in the court's opinion.[2] That portion of his instruction recites the facts constituting *as a matter of law* the offense which the court had stated was in violation of the Price Control Act and regulation 292. It is what the jury was expecting after the judge said to them that they were to be "governed * * * by the law as given you by the court." It was not necessary, and certainly not reversible error, not to have placed the words "It is the law that * * *" before the challenged instruction that

"If you believe beyond a reasonable doubt that on or about October 27, 1943, defendant sold five hundred and eighty two boxes of oranges to Aldrich & Company at a price of $5.50 per box, or for a total sum of $3,619.00, and that said transaction was on behalf of Morris Brothers Fruit Company, and that defendant wilfully and deliberately and not as a result of innocent mistake entered upon said Morris Brothers Fruit Company's copy of a statement showing such sale, and entry that the sale had been made at a price of $4.50 per box or a total sale price of $2,619.00, and that the statement was made in a record of the kind customarily kept by Morris Brothers Fruit Company during the time prior to January 11, 1943 (effective date of Regulation) then you will find defendant guilty as charged in Count One of

---

[2] Hughes Instructions to Juries (1905 ed.) § 172; Blashfield Instructions to Juries (1916 ed.) § 41; Thompson Charging the Jury, § 66; Randall's Instructions to Jury § 284.

534

the Information, regardless of what you may believe the correct ceiling price of such oranges to have been at said time.

On the other hand, if you entertain a reasonable doubt as to whether *any one or more of the elements I have just recited to you have been proved,* you must give the defendant the benefit thereof and acquit him." (Emphasis supplied.)

I take it that the extended discussion in the court's opinion means that the district judge should have taken two bites at the cherry and that he should have given two instructions, the first stating "A person violates the statute and regulations I have referred to if he has sold five hundred and eighty two boxes of oranges to Aldrich & Company at a price of $5.50 per box," and stating the further facts as in the challenged instruction, followed by the challenged instruction as to the law concerning the duty of the jury when it finds or fails to find these facts.

To me there is no need for such circumlocution. The federal courts have long since departed from the legal mumbo jumbo of the early common law period in England that the court's opinion reviews. The law as stated in the hypothetical alternative gave all that was necessary to bring a just verdict. The situation would be different if the instruction given were regarded by the court as omitting any of the essential facts constituting a violation of Price Regulation 292, as in United States v. Levy, 3 Cir., 153 F.2d 995, and United States v. Noble, 3 Cir., 155 F.2d 315. That, however, is not what the court holds. It was what was contended by Morris' brief and stated by the sixth paragraph of the court's opinion as not reached.

The instruction challenged sua sponte by the court properly expressed the law and the District Court's action in giving it should be sustained. Since, in any event, the jury's verdict would have been the same if there had been a more formal double statement of the law, no injustice was done and there is no warrant for invoking the rule of sua sponte action of Marco v. United States, supra.

Rehearing denied; DENMAN, Circuit Judge, dissenting.

